IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DEAN CAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | No. 09 C 3078 |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | Judge Virginia M. Kendall |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dean Cage ("Cage") sued Defendants the City of Chicago, Chicago Police employees Andrew Jones, John Ervin, Cecilia M. Doyle ("Doyle"), Pamela Fish ("Fish"), and as-yet unidentified employees of the City (collectively "Defendants") alleging claims under 42 U.S.C. § 1983. Specifically, Cage alleges that Defendants denied him the right to a fair trial in violation of the Due Process Clause. Cage also asserts constitutional claims for false imprisonment, malicious prosecution, failure to intervene, and conspiracy to deprive him of his constitutional rights. Cage further alleges state law claims for malicious prosecution, intentional infliction of emotional distress, civil conspiracy, *respondeat superior*, and indemnification. Finally, Cage seeks recovery against the City under *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1976), alleging that municipal customs, policies, and practices caused the alleged constitutional violations.

Defendants move to strike Cage's Rule 26(a) disclosures, which were made September 4, 2012. For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

On March 15, 2012, this Court entered an Order setting forth the initial expert discovery schedule for this case. (Dkt. 103.) In that Order, the Court required that Cage produce all expert reports by April 30, 2012, and that Defendants produce all of their expert reports by May 30. (*Id.*) Eight days before Defendants' May 30 deadline, Defendants asked this Court to grant an additional 60 days to disclose their initial experts. The Court granted Defendants' request, and set a new deadline for July 30, 2012 (Dkt. 118.) Cage was to respond with rebuttal disclosures by September 4, 2012. (*Id.*) At that time, initial Daubert briefing was set to commence November 13, 2012, with responses due by November 26 and replies by December 3. After the expert discovery schedule was set, Defendants proposed to move the Daubert schedule up so that all Daubert issues could be resolved before Defendants moved for summary judgment. According Defendants' request, the Court set a new Daubert briefing schedule, set to commence on September 17, 2012, with responses due October 1 and replies due October 8.

On September 4, 2012, Cage produced rebuttal disclosures that are the subject of the motion before this Court. Specifically, Cage disclosed the following: (1) two forensic serologists, Amy Lee ("Lee") and Marissa Meininger ("Meininger"), as fact witnesses; (2) an amended report and submitted by Gary Harmor ("Harmor"), an expert Cage disclosed on April 30, 2012; (3) Daniel Radakovich ("Radakovich"), a reasonable diligence expert; and (4) Dr. Karl Reich ("Reich"), a DNA expert. Defendants move to strike these disclosures on the basis that they do not constitute proper rebuttal. According to Defendants, Cage's September 4 disclosures simply parrot and bolster what previous experts have testified to in an attempt to get a "do-over" with respect to expert witnesses

who admitted to making mistakes after Cage's initial disclosures. Defendants also urge that all disclosures made by Cage on September 4, 2012 be stricken as untimely.

**DISCUSSION**

I. **Timeliness of Plaintiff's Disclosures**

Federal Rule of Civil Procedure 26(a)(2)(D) requires each party to disclose its expert opinion reports "at the times and in the sequence that the court orders." *See also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756–57 (7th Cir. 2004). Failing to disclose an expert witness by a court-ordered deadline results in an automatic and mandatory exclusion of the witness, unless the non-disclosure was justified or harmless. Fed. R. Civ. P. 37(c)(1); *Musser*, 356 F.3d at 758.

In this case, the Court did not change Cage's September 4, 2012 deadline for providing rebuttal disclosures. The Court moved Defendants' disclosure deadline from May 30 to July 30, 2012 in order to accommodate Defendants' request for additional time to respond to Cage's initial expert disclosures. While this compressed the expert disclosure schedule on Cage's end, it did not eliminate Cage's opportunity to offer disclosures in response to Defendants' experts. Because Cage submitted his disclosures by the September 4 deadline, the Court finds that Cage's disclosures were timely.

II. **Defendants' Substantive Objections to Plaintiff's September 4 Disclosures**

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of evidence offered by an adverse party." *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 630 (7th Cir. 2008) (quoting *United States v. Grin tjes*, 237 F.3d 867, 879 (7th Cir. 2001). If, as here, the court's scheduling order permits rebuttal experts and opinions, a party may submit an expert rebuttal witness who is "limited to contradicting or rebutting evidence on the same subject matter identified

by another party in its expert disclosures." *Butler v. Sears Roebuck & Co.*, No. 06 C 7023, 2010 WL 2697601, at *1 (N.D. Ill. July 7, 2010) (citing Fed.R.Civ.P. 26(a)(2)©). A party may not offer testimony under the guise of "rebuttal" only to provide additional support for his case in chief. *Peals*, 535 F.3d at 630. *See also Smetzer v. Newton*, No. , 2012 WL 2064507, at *2 (N.D. Ill. June 7. 2012) (noting that use of witness "solely as a rebuttal expert depends on whether his opinion is truly rebuttal"); *Larson v. Wis. Cent. Ltd.*, No. 10–C–446, 2012 WL 368379, at *4 (E.D. Wis. Feb. 3, 2012) (rebuttal report should be limited to contradicting or rebutting evidence on same subject matter identified by another party and cannot be used to advance new arguments or new evidence); *Noffsinger v. The Valspar Corp.*, No. 09 C 916, 2011 WL 9795, at *6–7 (N.D. Ill. Jan. 3, 2011) (limiting a rebuttal expert's opinion to his critique of defendants' experts' opinions and striking parts of the expert's report that went beyond the scope of a proper rebuttal witness). A "plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Braun v. Lorillard, Inc.*, 84 F.3d 230, 237 (7th Cir. 1996). If parts of an experts testimony constitutes improper bolstering while other parts fairly respond to the conclusions of the opposing party's experts, the appropriate course is to limit the proposed rebuttal expert's testimony rather than striking it altogether. *See e.g., Noffsinger*, 2011 WL 9795, at *7; *L.G. Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 242, 2010 WL 3397358, at *13–15 (N.D. Ill. Aug. 24, 2010); *Commw. Ins. Co. v. Stone Container Corp.*, No. 99 C 8471, 2002 WL 385559, at *6–7 (N.D. Ill. Mar. 12, 2002).

    **A.**    **Plaintiff's Disclosure of Two Lab Technicians**

On September 4, 2012, Cage disclosed two forensic analysts, Amy Lee and Marissa Meininger, who worked with Harmor in his lab at the Serological Research Institute ("SERI"). Lee

4

and Meininger performed part of the testing on the rape victim's underpants. According to Cage's disclosures, both analysts observed and contemporaneously documented that the test was positive for the presence of semen. Harmor reviewed, analyzed, and used these results as the basis for his opinion that Doyle's March 9, 1995 report ("the CPL Report") caused prejudice to Cage. Defendants urge that Cage's disclosure of Lee and Meininger be stricken because it is being offered for the sole purpose of bolstering Harmor's opinion that the lab test returned a positive result.

The Court finds that Cage's disclosure of Lee and Meininger does not constitute improper bolstering. At Harmor's deposition, Defendants sought to raise doubts about whether the tests performed at SERI were in fact positive. Defendants also offered testimony from Dan Bergman ("Bergman"), who opined that Harmor's test results are insufficient to qualify as positive because the line that represents a positive result was not visible. Cage, having been placed on notice that Defendants took issue with not just Harmor's procedures in performing the test, but also the result of the test itself, subsequently disclosed Lee and Meininger in order to rebut Bergman's opinion that the line was not visible. This is not improper bolstering. In light of Bergman's opinion that SERI's tests were not positive, Cage has properly offered the testimony of the Lee and Meininger in order to "contradict . . . or defuse the impact of the evidence offered by [the Defendants]." *Peals*, 535 F.3d at 630.

Nor does the Court find that the disclosures need to be stricken as cumulative. "Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony." *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, Nos. 01 C 0736 and 01 C 5825, 2004 WL 1899927, at *25 (N.D. Ill.

Aug. 23, 2004). However, such witnesses are generally excluded pursuant to Federal Rule of Evidence 403 – a rule that does not "pertain[] to the discovery or motion practice stage of the case," but rather the "trial stage of the case." *See Id.* at *24 (excluding witnesses from testifying at trial pursuant to motions *in limine*); *Merrill Lynch Business Fin. Servs., Inc. v. Gray Supply Co., Inc.*, Nos. 91 C 1449 and 91 C 1554, 1991 WL 278305 (N.D. Ill. Dec. 23, 1991) (same). Therefore, Defendants' motion to strike Cage's disclosures with respect to Lee and Meininger is denied.

### B. Plaintiff's Disclosure of Dr. Karl Reich

Defendants move to strike Cage's disclosure of Reich, a DNA and Serology expert. According to Defendants, Reich's opinions simply parrot and only serve to bolster opinions Harmor has already provided. Defendants assert the following as examples: (1) paragraphs 13–14 in Reich's declaration opine on the same issues as previously opined by Harmor at his deposition; (2) paragraphs 11–12 in Reich's declaration opine on the same issues as previously opined in paragraphs 10–13 of Harmor's declaration; and (3) paragraphs 8–11 and 15 in Reich's declaration opines on the same issue as previously opined in paragraphs 6–8 of Harmor's declaration.

#### 1. Paragraphs 13–14 of Reich's Declaration

At his deposition, Harmor testified that it was standard practice in 1995 for laboratories to cease testing after an Acid Phosphatase Semen Detection Test ("AP test") returned a negative finding for semen on a clothing exhibit. (Harmor Dep., p. 248.) Paragraphs 13 and 14 of Reich's declaration, on the other hand, explain how the procedures used by SERI in 2011 were identical to those the Chicago Police Department Crime Laboratory ("CPL") would have used in 1995. (Reich Decl., ¶ 15.) Reich also discusses the limitations of AP testing, such as the fact that only the largest and most concentrated stains can be used when conducting an AP test. (*Id.* at ¶¶ 14–15.) Contrary

to Defendants' assertions, Reich does not opine that it would have been standard practice for CPL to cease testing after the AP test returned a negative result.[1] Therefore, this Court finds that paragraphs 13–14 of Reich's declaration do not parrot Harmor's testimony.

### 2. Paragraphs 8–12 and 15 of Reich's Declaration

In paragraphs 6–8 of his declaration, Harmor describes and provides an opinion on the testing performed by Doyle, a Forensic Biologist with the CPL. According to Harmor, Doyle performed only "cursory examination" of the clothing articles obtained from the victim in the underlying criminal case. (Harmor Decl. ¶ 6.) Harmor further states that Doyle should have tested for saliva after the victim reported being licked by her assailant. (*Id.*) Lastly, Harmor explains why Doyle's use of the word "extracts" in the CPL Report would lead a DNA practitioner to assume that slides were created and searched microscopically for sperm. (*Id.* at ¶¶ 7–8.) In paragraphs 10–13 of Harmor's declaration, Harmor (1) explains the importance of conducting a review of reports conducted by CPL scientists; (2) points out that Fish, Doyle's supervisor, admitted that she did not review the conclusions in Doyle's report for accuracy; (3) opines that CPL serology unit did not meet the minimum standards for a laboratory doing examinations for biological fluids on items of evidence for use in a court of law; and (4) concludes that Fish's failure to review Doyle's report for accuracy caused a misreporting to occur. (Harmor Decl., ¶¶ 10–13.)

While Reich's declaration does not reference Doyle's failure to perform a saliva test, it does describe CPL's screening as "perfunctory" and provides additional details as to why use of the word "extract" in the serology context gives the impression that microscopic testing was preformed.

---

[1] In fact, in the very next paragraph, Reich appears to take a critical view of CPL's decision to not perform additional testing beyond AP analysis, stating that the evidence suggests CPL "only performed a perfunctory screening" in Cage's criminal case. (Reich Decl., ¶ 15.)

7

(Reich Decl., ¶¶ 8–10, 15.) Reich, like Harmor, opines that the CPL Report "is not an accurate description of the analysis or screening that was performed by the [CPL]" because "[t]he report described that the [CPL] prepared extracts from the victim's underpants, but in fact they had not." (*Id.* at ¶ 11.) In paragraph 12 of his declaration, Reich concludes that the CPL Report was clearly erroneous and not appropriately reviewed for accuracy and completeness. (Reich Decl., ¶ 12.) Defendants contend that these paragraphs parrot paragraphs 10–13 of Harmor's declaration.

The Court recognizes that Reich's opinions touch upon subjects previously addressed by Harmor. However, "the mere fact that opinions offered in a rebuttal report touch upon the same subjects covered in an initial expert report does not require that the rebuttal be stricken." *Green v. Kubota Tractor Corp.*, No. 09 CV 7290, 2012 WL 1416465, at *5 (N.D. Ill. Apr. 24, 2012). The "focus is not on the similarity between the initial and rebuttal reports, but rather on whether the opinions expressed in a rebuttal report rebut the same subject matter identified in the other party's expert report." *Kubota*, 2012 WL 1416465 at *5 (internal quotations omitted).

Here, Reich's declarations concerning the shortcomings of the CPL Report cover the same subject matter identified in Defendants' disclosures and therefore constitute proper rebuttal. According to Reich, Doyle's use of the word "extract" in the CPL Report could be misleading. These assertions provide additional support for opinions submitted by Cage in his initial disclosures – opinions that were called into question through Defendants' disclosure of Barry Spector. (Spector Aff., ¶¶ 14–15.) Cage, appropriately, is using this opportunity to defuse the impact of Spector's opinions. Accordingly, the Court finds Cage's disclosure of Reich to be proper rebuttal.

Defendants also assert that Cage's disclosure of Reich was improper under the Federal Rules because it did not include attachments that would give defense counsel notice of Reich's

8

qualifications, billing rate, and prior testimony. Federal Rule of Civil Procedure 26(a)(2)(B)(vi) requires that an expert's report include "a statement of the compensation to be paid for the study and testimony in the case." Such information is relevant to the expert's credibility and bias. *See, e.g., In re Chicago Flood Litigation*, 93 C 1214, 1995 WL 437501, at *9 (N.D. Ill. July 21, 1995). To the extent that Plaintiffs have not provided this information to Defendants, the Court will order that they be provided.

### C. Plaintiff's Disclosure of Daniel Radakovich

Defendants move to strike Cage's disclosure of Daniel Radakovich, an expert on reasonable diligence of attorneys. According to Defendants, Radakovich's opinion duplicates the declaration of William Jameson Kunz ("Kunz"), a former supervisor at the Cook County Public Defender's Office who also testified as a reasonable diligence expert.

As part of Cage's initial expert disclosures, Kunz offered opinions about how a reasonably diligent attorney would have viewed the CPL Report. (Kunz Decl. ¶ 5.) Kunz explained in his declaration that a reasonably diligent criminal defense attorney in 1995 would have accepted the truthfulness of factual representations in a serological report from CPL and not requested to inspect the crime lab file itself or sought to send the evidence to an independent laboratory. (*Id.* at ¶¶ 5–8.) According to Kunz, it would have been "highly unusual, if not unheard of, to spend resources simply to replicate testing already performed by the [CPL]." (*Id.* at ¶ 9.) At his deposition, however, Kunz admitted that a reasonably diligent criminal defense attorney *would have* asked the CPL if testing for the presence of saliva on clothing could be done. (Kunz Dep., pp. 164–165.) Kunz further stated at his deposition that in certain hypothetical situations, a reasonably diligent defense attorney would have asked to see his client's file from a prior case, ask the prosecutor for lab notes related to the

testing, and file a motion for additional discovery to obtain those notes. (*Id.*, pp. 171, 208, 212–213.) If those lab notes indicated that testing the defense attorney wanted had not been done, a reasonably diligent defense attorney, according to Kunz, would have filed a motion directing the lab to perform additional tests. (*Id.* p. 209.)

Defendants also disclosed their own reasonable diligence expert, Barry Spector, who disagreed with Kunz and opined that a reasonably diligent attorney in the shoes of Cage's defense lawyer would have uncovered the truth about the CPL Report through subpoenas, more testing, and phone calls to police officers and prosecutors. (Spector Aff. ¶¶ 19–20.) In addition to refuting Kunz's declarations, Spector refutes Plaintiff's assertion that the CPL reports misled Cage's criminal defense attorneys by using the term "extracts" to imply that microscopic testing had been performed on the victim's clothing. (*Id.* at ¶¶ 14–15.) Spector concludes that Cage's defense attorneys, Robert Willis ("Willis") and Roosevelt Thomas ("Thomas"), did not exercise reasonable diligence when representing Cage. (*Id.* at ¶¶ 21–23.) Spector lists several bases for this conclusion, many of which are unrelated to Wills and Thomas's alleged failure to properly interpret the CPL Report and request additional testing. Specifically, Spector opines that Cage's defense counsel failed to: (1) litigate relevant pretrial motions; (2) file a motion to suppress the identification of Cage's voice by the victim; (3) serve subpoenas to all potential witnesses (including treating doctors); (4) impeach the complaining witness on cross-examine regarding her opportunity to observe her attacker; (5) interview all potential alibi witnesses, particularly Cage's girlfriend, before deciding to call them as witnesses; (6) adequately prepare Cage's girlfriend for her testimony; (7) familiarize themselves with the trial judge's findings in Cage's previous criminal proceeding; (8) review all of Cage's previous statements and prepare him in the event he chose to testify at trial; and (9) recognize that the medical

evidence of redness in the victim's vaginal area actually supported a theory raised during motions *in limine*. (*Id.* at ¶ 23.) Spector also suggests that Cage's defense attorneys may have failed to provide him with effective assistance of counsel. (*Id.* at ¶ 18.)

Cage admits that he expected Spector to disagree with Kunz's conclusions regarding what a reasonably diligent attorney would have done with respect to the CPL lab results, but argues that Defendants, by disclosing opinions about Cage's defense counsel's trial strategy and suggesting they provided Cage deficient assistance, have taken things in an entirely new and unanticipated direction. According to Cage, the disclosure of Radakovich is appropriate rebuttal because Radakovich speaks directly to Spector's conclusions – conclusions that went far beyond scope of Kunz's opinions.

The bulk of Radakovich's letter is dedicated to refuting Spector's opinions concerning Willis and Thomas's trial strategy and his suggestion that they provided ineffective assistance of counsel – topics Kunz did not discuss in Cage's initial disclosure. (Radakovich Letter, pp. 3–10.) This constitutes proper rebuttal. Cage's disclosure of Kunz focused on whether a reasonably diligent defense attorney would have trusted the CPL Report, sought additional testing from an independent lab, and requested a saliva test. Spector's opinions, on the other hand, go beyond the CPL Report and criticize several aspects of Cage's defense team's trial strategy. Cage should have the opportunity to respond to these arguments. The last portion of Radakovich's opinion refutes Spector's conclusion that the term "extract" was ambiguous and without a widely-accepted meaning during the relevant time period. This, too, is proper rebuttal because it directly contradicts, refutes, and attempts to defuse Spector's conclusions.

Defendants maintain that to the extent Radakovich's opinions extend beyond Kunz's, they do so because Kunz could have, but refused to, testify to such opinions under oath. The record does

not support that position. It is unclear from the record whether Kunz was ever asked to opine on the finer aspects of Cage's defense counsel's trial strategy. It would be purely speculative for this Court to assume, as Defendant's suggest, that Kunz's silence with regard to these issues was motivated by a belief that Cage's defense counsel did not act in a reasonably diligent manner. This Court will not exclude Radakovich's testimony on such an assumption. Furthermore, "Rule 26 does not automatically exclude evidence that an expert could have included in his original report" because "[s]uch a rule would lead to the inclusion of vast amounts or arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing relevant material." *City of Gary v. Paul Shafer*, No. 2:07 CV 56 PRC, 2009 WL 1370997, at *5 (N.D. Ind. May 13, 2009) (citing *Crowley v. Chait*, 322 F.Supp. 2d 530, 551 (D.N.J. 2004).

Also, contrary to Defendant's assertions, the mere fact that Radakovich and Kunz opine on the same topic—reasonable diligence for criminal defense attorneys—does not bar Radakovich's opinions. To the contrary, it strengthens Cage's argument that the disclosures are proper rebuttal. *Butler*, 2010 WL 2697601, at *1 (N.D. Ill. July 7, 2010) (expert rebuttal "limited to contradicting or rebutting evidence on *the same subject matter* identified by another party in its expert disclosures") (emphasis added). If a party were to offer disclosures on a topic completely unrelated to what was provided by the adverse party, it is *more*, not less likely that the disclosure will be considered improper. Because rebuttal disclosures are designed to rebut, they naturally, and necessarily, cover topics already discussed in previous disclosures. Therefore, this Court finds that Cage's disclosure of Radakovich is not duplicative and does not amount to improper bolstering.

### D. Plaintiff's Disclosure of Gary Harmor's Amended Testing Report

Lastly, Defendants move to exclude Harmor's amended report and supplemental testing data. According to Defendants, Harmor goes beyond simply fixing corrections and errors pointed out during his deposition, and instead attempts to inject in his amended report new substantive language and previously undisclosed testing results. Defendants assert that this is an attempt to get a "do-over" after Harmor's findings were called into question at his deposition.

Although Federal Rule of Civil Procedure 26(e) requires a party to supplement an earlier disclosure when that party learns that the disclosure was incomplete or incorrect, it "does not give the producing party a license to . . . offer new opinions under the guise of the 'supplement' label." *Amari v. C.R. England, Inc.*, No. 1:07–CV–1616–WTL–TAB, 2010 WL 2943686, at *2 (S.D. Ind. July 21, 2010). *See also Butler*, 2010 WL 2697601 at *1 (N.D. Ill. July 7, 2010) (duty to supplement "does not allow a party to tender wholly new expert opinions").

In this case, Harmor does not offer any new opinions in his supplemental disclosure. To the extent that Harmor seeks to clarify is original report and correct mistakes acknowledged at his deposition, Harmor's amended report is appropriate under Rule 26(e). To the extent it includes opinions and new bases for Harmor's original opinions, the report constitutes proper rebuttal to Bergman and Spector's opinions. After being put on notice that Defendants intended to question Harmor's procedures and results, Harmor performed additional tests to rebut and defuse the impact of disclosures Cage anticipated from the Defendants.[2] Cage recognized the weaknesses Defendants

---

[2]The fact that Harmor began performing additional tests for his amended report before Defendants disclosed their expert witness does not change the analysis. Plaintiffs were made aware of the nature of Defendants' challenges to Harmor's findings at Harmor's deposition, which took place on July 2, 2012. The Court finds nothing improper about Plaintiff's decision to begin preparing its rebuttal disclosures based on what it anticipated Defendants to argue in its response disclosures.

sought to exploit, and responded by performing tests and providing explanations that speak to those weaknesses. This is the essence of rebuttal. Accordingly, the Court finds that Harmor's amended report does not constitute improper bolstering or amount to an attempt at a do-over of Cage's initial disclosure. Defendants will have the opportunity to cross-examine Harmor on the timing of his tests and any inconsistencies between his original and amended report. At this stage in the proceedings, however, the Court sees no reason to exclude Harmor's amended report and rebuttal findings.

## CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion to Strike Plaintiff's September 4, 2012 Disclosures and Bar Plaintiff's Additional Witnesses is denied. Plaintiff is ordered to provide Defendants, within ten (10) days of receipt of this Memorandum Opinion and Order, a statement of Karl Reich's qualifications, billing rate, and prior testimony, if they have not done so already.

_____
Virginia M. Kendall
United States District Court Judge

Date: November 14, 2012